446 P.2d 22

**Christine Ann SAN MIGUEL, Petitioner,**

v.

**Honorable Warren L. McCARTHY, Judge of the Superior Court of Maricopa County, Arizona, Respondent;**

**Robert K. CORBIN, Maricopa County Attorney, Real Party in Interest.**

**No. I CA–CIV 938.**

Court of Appeals of Arizona.

Oct. 17, 1968.

Kenneth A. Harper, Phoenix, for petitioner.

Joseph B. Swan, Jr., Deputy County Atty., for real party in interest, Corbin.

STEVENS, Judge.

The petition in question seeks a "writ of certiorari, or, alternatively writs of prohibition and mandamus" challenging the propriety of an order of the Superior Court for Maricopa County, denying petitioner's motion for an appointment of a psychiatrist and an investigator at state expense, and denying petitioner's motion to quash an information. The recent Arizona Supreme Court opinion in the case of Genda v. Superior Court, 103 Ariz. 240, 439 P.2d 811 (1968) reviews numerous prior Arizona

decisions in relation to the exercise of original jurisdiction by courts of appellate jurisdiction in Arizona. On p. 813 the Arizona Supreme Court stated:

"More recent cases, however, reflect a more liberal approach to the issuance of extraordinary writs, with our primary concern to see that essential justice is done in the individual case."

The Arizona Supreme Court has taken a broad view concerning its exercise of original jurisdiction and under these circumstances we do not deem it necessary to classify the particular nature of the relief which appears to be most appropriate.

Petitioner is an indigent defendant in a pending criminal prosecution for perjury. The information was filed on 10 June 1968. On 24 June 1968 petitioner was arraigned and entered a dual plea of not guilty, and not guilty by reason of insanity pursuant to A.R.S. § 13–1621.01. This is a new section which was added in 1968. The petitioner's present counsel was appointed to represent petitioner in the trial court due to a conflict of interest problem which precluded the Maricopa County Public Defender's Office from representing her. Following the appointment, the petitioner filed a motion with the Superior Court requesting the appointment of a psychiatric expert and an investigator, at state expense, to aid in petitioner's defense. Petitioner also moved to quash the information. On 27 August 1968 the Superior Court entered the following order:

"It Is Ordered, 1. Denying motion for psychiatric examination of chief prosecution witness. 2. Denying motion for appointment of psychiatric expert to assist in preparation of defense. 3. Denying motion to quash or dismiss information."

Petitioner first contends that denial of the motion for appointment of a psychiatric expert was, among other things, in violation of a duty imposed upon the court by A.R.S. § 13–1621.01, which relates to separate trials where insanity is asserted as a defense to a criminal charge.

In this, petitioner is correct. A.R.S. § 13–1621.01 provides, unless good cause is shown, for two separate trials where the defense of not guilty by reason of insanity is pleaded.

A.R.S. § 13–1621.01, subsec. J is as follows:

"In any case involving the defense of not guilty by reason of insanity, both the defendant and the state shall have the right to have the defendant examined by qualified psychiatrist appointed by the court for the purpose of presenting testimony."

■ Although the above quoted section does not specifically designate at what point in the two phase proceedings a qualified psychiatrist is to be appointed, it is the opinion of this Court that, when read as a whole, A.R.S. § 13–1621.01 contemplates the appointment of a psychiatrist for examination of the accused prior to the first phase of the trial, the trial on the issue of guilt.

■ This is certainly the case where there is a showing of "good cause" justifying the single trial of the two issues, as provided by section A of A.R.S. § 13–1621.-01. Even where separate trials are held on the issues of guilt and insanity, we find it unlikely that an accused who asserts insanity as a defense will forego preparation of the defense of insanity until after the issue of guilt has been tried. The availability of a court appointed psychiatrist to an accused prior to the beginning of the first trial is essential to the preparation of the accused's case.

There are several reasons which necessitate the availability of a court appointed psychiatrist prior to the first trial. For example, psychiatrist's report of the accused's mental condition is essential to inform counsel for the accused whether he will pursue the defense of insanity. Also, the opportunity of a court appointed psychiatrist to observe the accused during the first trial is a factor which could possibly be considered by the psychiatric expert in his analysis of the accused. We further

note, that throughout the first phase of the trial, from the voir dire stage on, the accused might present his case in such a manner as to lay foundations relevant to the presentation of his defense at the second phase of the trial.

While we hold that A.R.S. § 13–1621.01 requires the court appointment of a psychiatrist for the petitioner prior to the commencement of the trial on the issue of guilt, we do not express an opinion in relation to whether the petitioner has the right to have the psychiatrist testify on her behalf at the first phase of the trial, reserving this matter for determination by the trial court.

We are not called upon to determine the potential question as to reconciling Criminal Rule 250, 17 A.R.S. and the 1968 Legislative Act. This Court expressly reserves all questions as to the inter-relation, if any, between this rule and the Legislative Act.

Petitioner next contends that the order of the trial court denying the motion for the appointment of an investigator was in excess of the court's jurisdiction because the court was under a constitutional duty to appoint an investigator at state expense.

This contention was considered by our Supreme Court in State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), and by the Court of Appeals, Div. Two, in State v. Superior Court In and For County of Pima, 2 Ariz. App. 458, 409 P.2d 742 (1966).

In *Crose*, our Supreme Court rejected this contention as related to a request for an appointment of a medical expert, stating 88 Ariz. at page 392, 357 P.2d at page 137:

"He has cited us no authority to support that position, and our own independent investigation has disclosed none. That he has the right to counsel, and the right of private access to his counsel, is not in doubt. Constitution of Arizona, Article 2, Sec. 24, A.R.S.; Rule of Criminal Procedure 163. We know of nothing, however, either by constitution or by statute, requiring the state at its own expense to make available to the defend-

ant, in addition to counsel, the full paraphernalia of defense."

In State v. Superior Court, a similar question was presented to the Court of Appeals, Division Two, in petition for certiorari, wherein it was alleged that the trial court exceeded its jurisdiction when it entered an order directing the County Treasurer to pay medical expenses incurred for service rendered by a doctor to the indigent accused in aid of his defense. Respondent urged that notwithstanding the lack of a statute authorizing the supplying of an expert witness at state expense, such was required by the due process and equal protection clauses of the 14th Amendment.

After noting the absence of any statutory authority requiring the payment of expert witnesses fees for an indigent accused, the court then said 2 Ariz.App. at page 460, 409 P.2d at page 744:

"The principal authority, apart from legislative silence, in support of the petitioners' position is the decision of the Arizona Supreme Court in the case of State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960). The case holds that the state is not mandated by constitutional "provision to provide a ' * * * full paraphernalia of defense' and that medical experts are part of this paraphernalia not provided at public expense."

The Court of Appeals further stated at page 460, 409 P.2d at page 744:

"The position of the Arizona Supreme Court does not admit of ambiguity, and is binding upon this court unless recent interpretations of the United States Constitution by the United States Supreme Court have rendered the position of the Arizona Supreme Court untenable."

The Court then reviewed the decision of the U. S. Supreme Court in Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and concluded that neither decision

imposed a constitutional duty upon the state to provide at its own expense, expert assistance to an indigent. The Court held that *Crose* was still the law, and reversed the trial court's order directing payment of the medical fee.

Petitioner has cited one case which holds that the state has a constitutional duty to appoint an investigator, at state expense, to aid an indigent defendant in his defense. This case is People v. Watson, 35 Ill.2d 228, 221 N.E.2d 645 (1966), wherein the Illinois Supreme Court held that the right to compel witnesses which is guaranteed under the Illinois Constitution and the 6th Amendment of the U. S. Constitution imposed a duty upon the State to make available to an indigent the services of a handwriting expert to aid in preparation for trial.

■ Our research reveals no decisions of the United States Supreme Court overruling the position of our Supreme Court as announced in *Crose*. We hold that *Crose* is still the law in Arizona, with respect to the matter under discussion, and conclude that the trial court did not exceed its jurisdiction in denying petitioner's motion for appointment of an investigator at state expense.

We do not express an opinion with reference to the right of counsel to obtain reimbursement for expenses which he might incur during the course of preparing petitioner's defense.

Petitioner finally urges that the trial court abused its discretion or acted in excess of its jurisdiction in denying petitioner's motion to quash the information charging her with perjury. Petitioner takes the position that she was arbitrarily singled out for prosecution on a discriminatory basis, prompted by a publicized campaign to crack down on perjurors.

This contention is governed by the rules announced by the Arizona Supreme Court in State ex rel. Ronan v. Stevens, 93 Ariz. 375, 381 P.2d 100 (1963), and followed in State v. Stewart, Ariz., 445 P.2d 433 decided by the Arizona Supreme Court on 25 September 1968.

In Stevens the Court commented on the power of the trial court to dismiss an information, stating 93 Ariz. at page 378, 381 P.2d at page 102:

"A court has no power, in the absence of statute or rule, to dismiss the good information or indictment over the protest or objection of the prosecuting attorney."

After noting the absence of any statutory authority vested in the Superior Court to dismiss an information, the court held that the trial court had exceeded its jurisdiction in dismissing the information.

■ In *Stewart,* defendant was convicted of robbery after having plead guilty. The original information had charged defendant with robbery and assault with intent to commit murder. After pleading guilty to robbery, the assault charge was dropped. On appeal the defendant contended that the assault charge was spurious and included in the original information for the sole purpose of scaring the defendant into pleading guilty on the robbery charge. After finding that the assault charge was not spurious, the Supreme Court dismissed this contention, stating:

"The prosecutor may use discretion in deciding which offense he will prosecute. State v. Stevens, 93 Ariz. 375, 381 P.2d 100 (1963)."

We hold that the trial court did not abuse its discretion or exceed its jurisdiction in denying petitioner's motion to quash the information.

The issuance of the mandate by this Court will constitute a directive to the trial court for further proceedings not inconsistent with this opinion.

CAMERON, C. J., and DONOFRIO, J., concur.